IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Mark Lott a/k/a Mark Tillman Lott a/k/a ML, | ) ) |
| Plaintiff, | ) )  Civil Action No.: 2:12-2471-DCN-WWD ) |
| v. | ) ) REPORT AND RECOMMENDATION ) OF MAGISTRATE JUDGE ) |
| Robert Scott, Correctional Officer, in his official and individual capacities; and Turbeville Correctional Institution, | ) ) ) ) |
| Defendants, | ) |

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a state prisoner represented by counsel and proceeding in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the Defendants' summary judgment motion under Fed.R.Civ.P. 56(c). 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(d), D.S.C..

The Plaintiff, Mark Lott (Lott), a state prisoner, filed his complaint on August 27, 2012, and named Robert Scott, (Scott) a correctional officer at the Turbeville Correctional Institution (TCI), and TCI as Defendants. On October 15, 2012, counsel

---

[1] Section 1983, titled a civil action for deprivation of rights reads in relevant portion: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983

1

was appointed[2]. An verified amended complaint alleging excessive force in violation of the Eighth Amendment was filed on January 15, 2013, in which Lott averred that on September 28, 2011, Scott, while serving in his capacity as a correctional officer at the TCI, did deliberately choke him, without provocation, causing him to suffer injury to his neck. Lott asserted Scott did so in a manner not to maintain or restore discipline at the TCI, but rather, to intentionally harm the Plaintiff.

Further, on April 28, 2012, Lott reported the incident to the Defendant, TCI, and no action was taken against Scott. TCI, knowing of the improper actions of Scott, continues to enable Scott to supervise Lott in Scott's capacity as a correctional officer.

Lott seeks damages.

On January 17, 2014, the defendants filed their motion for summary judgment along with excerpts from Lott's deposition, his medical records, Scott's affidavit, and Lott's disciplinary records. On January 30, 2014, Lott filed his opposition to the motion along with his sworn "statement of claim." Hence, consideration of the motion is appropriate.

## Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment

---

[2] On September 19, 2012, Lott affirmed that he was under the age of eighteen (18) years old in his answer to the court's special interrogatories. Thus, it appeared that Plaintiff was a minor. Accordingly, this court "must appoint a guardian ad litem—or issue another appropriate order—to protect ... [Plaintiff] who is unrepresented," in this action. Fed. R. Civ. P. 17(c). Jessica Salvini, Esq. (Salvini) was appointed to represent Lott.

Salvini requested and was granted additional time to amend the pleading, and in her motion she advised the court that, "After due inquiry, counsel has determined that Plaintiff has reached the age of majority. Thus, Plaintiff is not a juvenile as that term is defined by law. However, Plaintiff was/is informed and believes he is a 'juvenile' as he had not reached the age of twenty-one when he responded to the Court's Special Interrogatories.'" (Doc. 22).

"shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also, Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

Claims against Defendants in Their Official Capacities

As a preliminary matter, to the extent Plaintiff seeks monetary damages from Scott in his official capacity as an employee of the South Carolina Department of Corrections (SCDC) at TCI, that claim should be dismissed.  In Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. Monell v. Dept. of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In addition, states and state agencies like the SCDC and its facility, TCI, are not "persons" as defined by 42 U.S.C. § 1983 and therefore are not subject to suit under § 1983. Will, 491 U .S. at 58.  Furthermore, the Eleventh Amendment to the United

States Constitution bars a suit in federal court when the Defendant is a state or a state agency. Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

Thus, summary judgment as a matter of law is appropriate on Plaintiff's claims against Defendant Scott in his official capacity and against TCI. Only Defendant Scott in his individual capacity will be considered further.

Eighth Amendment Excessive Force Claim

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the force applied was objectively harmful enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

The subjective component requires an inmate to demonstrate that the force used by the officer inflicted unnecessary and wanton pain and suffering, a question which turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Factors the court should consider in determining whether a prison official acted maliciously and sadistically include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7; see also, Williams, 77 F.3d at 762.

To prove the objective component of an excessive force claim, an inmate "must show that correctional officers' actions, taken contextually, were 'objectively harmful

4

enough' to offend 'contemporary standards of decency.'" <u>Stanley v. Hejirika</u>, 134 F.3d 629, 634 (4th Cir. 1998) (quoting <u>Hudson</u>, 503 U.S. at 8). The objective component is not nearly as demanding as the subjective component because "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 36 (2010).[3]

An excessive force claim is cognizable even if an inmate does not suffer serious injury. In determining whether a complaint states an Eighth Amendment claim that defendants used excessive force, the "core judicial inquiry" does not concern the extent of the injury but rather the nature of the force—"specifically, whether it was nontrivial and 'was applied ... maliciously and sadistically to cause harm.' " <u>Wilkins</u>, 559 U.S. at 39 (quoting <u>Hudson</u>, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." <u>Hudson</u>, 503 U.S. at 9; see <u>Wilkins</u>, 559 U.S. at 38 (holding that an inmate who was the victim of excessive force did not lose the ability to pursue an excessive force claim because he had "the good fortune to escape without serious injury").

Facts Submitted

The Plaintiff has included his sworn statement from his original <u>pro se</u> complaint as part of his amended complaint in which he avers, verbatim:

On September 28th 2011 while waiting in the dorm for lunch and to go to School I

---

[3] The court in <u>Wilkins v. Gaddy</u>, 559 U.S. 34 (2010), abrogated the Fourth Circuit interpretation of <u>Hudson</u> requiring dismissal of excessive force claims in the absence of more than *de minimis* injury.

> was assaulted by another inmate and my officer which was Scott saw it from the dorms control booth. He came in and locked the other inmate down then locked me down. When he went to lock my door I asked him if I would be able to go to school to do my pre GED. He said, I know what you got to do so don't worry about it. Then he locked my door. When he walked away another inmate who was by my door and my neighbor who was locked down was talking. Then one of them hit the door. Officer Scott thought it was me and he came back and opened my door. He let the keys fall to hang by his side. He grabbed me around the neck and pushed me into my table while he was still choking me then with his hands still around my neck he pushed me onto my bed and continued choking me. While this was going on some inmates had went to get Corporal J Singletary who was working the other wing. When he came in Officer Scott let me go and grabbed me by my shirt and the escorted me to the holden cell. I sat there during Count. After Count Officer Scott got me out and took me to the wing and went on wing. I was waiting by Control booth so I tried to tell my dorm Lt what happened.  She did not understand me. So when I went to Pill line I talked to the captain who did not say anything. The next day while at the Canteen my dorm Lt asked why I did not tell her. I told her I tried to. She said I was going to Medical and took me up there. So I was seen and had Pain Still and Small Abrasions on my right side. Medical Pages included with report from nurse, I received the Grievance in December. Then on December 26th I was placed on Suicide Watch on Officer Scott's shift. I got off on 3 days later and my grievance was missing, and Officer Scott would get me to clean up again and started giving me extra food because he knew I wanted to do a lawsuit. Now he works in my dorm.

The Defendant presented his own affidavit in which he denies that he ever choked Plaintiff at all, but rather that the Plaintiff was "in a combative situation because he was refusing orders, being belligerent and kicking his cell door. I removed his boots and the incident was handled pursuant to SCDC policy and procedure." (Aff. Of Scott Doc. 56).

The Defendant also filed the incident report which he submitted which indicated in relevant portion that he, "was observing the top tier and observed I/M Ricky Hickson and I/M Mark Lott horseplaying. I gave them a verbal directive to stop and they complied, so I then proceed to put them in their cells. As I walked away from I/M Mark Lott's cell he started to kick on the door. So I told him to step back then he became

6

combative. I then took his boots for kicking and removed him from population and put him in a holding cell. I am charging him with 844 Interfering with duties of any person." (SCDC Incident Report Doc. 56).

Plaintiff's medical records show he went to sick call on the morning following the incident where he complained of chest pain, but no distress or trauma was noted. He was given non-prescription pain relievers.

Plaintiff also went to Medical that same afternoon complaining of neck pain due to his allegation of an assault by a security officer who "placed his hands around his neck and 'choked him.'" The nurse reported, "small abrasions noted to right side of neck. These abrasions are scabbed over. I/M able to move neck without difficulty, but he does state, 'pain with movement'". He was instructed to return to Medical as needed. No further relevant encounters with Medical were noted. (Med. Rec. Doc. 56).

The Defendant submitted the TCI disciplinary file of the Plaintiff and excerpts from the Plaintiff's deposition in support of his assertion that he reasonably perceived the Plaintiff's actions to be a threat to prison officials. (Dep. of Lott, pp.143-150; see Exhibit B , Disciplinary and Incident Reports, Doc. 56). Nevertheless, review of the TCI Incident reports and Disciplinary reports show that only a single incident occurred before the alleged assault at issue here; on August 12, 2011, the Plaintiff and his cellmate were charged with consensual sexual misconduct.

Last of all, the Defendant submitted deposition excerpts in which the Plaintiff described some parts of the incident:

3    Q .Let's look at his statement,
4  beginning about the third down of the page. He says he was
5  observing the top tier when Hickson and Lott were

7

6  horseplaying. You told me today that Hickson hit you in
7  the back of the head.
8       A. He did. I never -- I wasn't horse playing with
9  him. I never even touched him, or either attempted to
10  touch or hit him. He hit me in my back -- the back of my
11  head, and then that's when they give us the verbal
12  directive to stop and go to our rooms.
13       Q. So you disagree with Officer Scott's description
14  that you were part of the horseplay.
15       A. I disagree with it.
16  Okay. And were you were you joking around
17  with Hickson? Were you engaging in any way with him?
18       A. No, sir.
19       Q .Okay. Did he tell you-all to stop?
20.      A. Yes, he did.
21       Q. And did you-all stop?
22       A. Well, Hickson stopped. That's correct.
23       Q. All right. And then he says he proceeds to put
24  you all in your cell.
25       A. That's correct.
(Pl. Dep. Pg. 121, Doc. 56).


9       Q. I just have a couple of questions. Mark, you
10  said on September 28th, 2011, the events that led up to the
11  incident with Officer Scott, was another inmate hitting you
12  In the back of the head.
13       A. That's correct.
14       Q. How hard did that inmate hit you?
15       A. Not too hard. I mean, it was kind of hard, but
16    not really hard.
17       Q. Did it -- did that cause any injury to your neck?
18       A. No, I didn't.
19       Q. When he hit you, did his nails or -- or anything
20  scratch the side of your neck?
21    A. Yes, ma'am. It didn't
22    Q.  The way he hit you, could it have left the
23  abrasions that the medical staff saw and noted in their
24    A. No, ma'am. 'Cause he hit me in the back of the head.
 (Pl. Dep. Pg. 143, Doc. 56).

## DISCUSSION

A review of the record and relevant case law reveals that the Defendant's Motion

for Summary Judgment should be denied as there exists genuine issues of material fact

precluding judgment as a matter of law.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, at 255 (1986). Accordingly, the Plaintiff's evidence is that he did not fail to obey the Defendant's orders either in the "horseplay" incident or when told to stop hitting his cell door; that he was compliant with all the Defendant's instructions at all times. The Plaintiff admits that he believes that the Defendant made a mistake in thinking that he was the inmate who was kicking the cell door.

That belief could reasonably be found to show Defendant was acting in good faith and not for a malicious purpose, at least initially. Nevertheless, Plaintiff also avers that, as events continued, the Defendant choked him with both hands around his neck, both while pushing him onto his desk and then onto his bed while Plaintiff was not being disobedient or resisting in any way. If believed by a reasonable fact finder, that would support the inmate's burden to prove the required subjective component of an excessive force claim, i.e., that the force used by the officer inflicted unnecessary and wanton pain and suffering, a question that turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Wilkins v. Gaddy, 559 U.S. 34, 39, (2010) (quoting Hudson, 503 U.S. 1, at 7).

In addition, based on the evidence that the Plaintiff had only a single disciplinary incident at TCI prior to September 28, 2011, one which did not involve a threat to officer security, a fact finder could conclude that the Defendant's assertion that he knew

9

Plaintiff to be a heightened threat was untrue or at least unreasonable. That further undermines the Defendant's argument that Plaintiff has failed in his burden to show the subjective element of an excessive force cause of action. See, Whitley, 475 U.S. at 320-21.

Last of all, Plaintiff did have small abrasions on his neck the day after the alleged incident, which Plaintiff described as painful and which he attributed to the Defendant's choking. The medical records could establish that the alleged wrongdoing is objectively "harmful enough" to establish an Eighth amendment violation. Hudson, 503 U.S. at 2. An excessive force claim is cognizable even if an inmate does not suffer serious injury. In determining whether a complaint states an Eighth Amendment claim that Defendant used excessive force, the "core judicial inquiry" does not concern the extent of the injury but rather the nature of the force, "specifically, whether it was nontrivial and 'was applied ... maliciously and sadistically to cause harm.' " Wilkins, 559 U.S. at 39 (quoting Hudson, 503 U.S. at 7). When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident. Hudson, 503 U.S. at 9; see Wilkins, 559 U.S. at 38 (holding that an inmate who was the victim of excessive force did not lose the ability to pursue an excessive force claim because he had the good fortune to escape without serious injury).

## Conclusion

Accordingly, for the aforementioned reasons, it is recommended that summary judgment be granted in part and denied in part. Summary judgment is appropriate on Plaintiff's claims against Defendant Scott in his official capacity and against TCI as they

are immune from suit for damages and are not "persons" within the meaning of 42 U.S.C. 1983.

Furthermore, based upon the evidence presented and taken in a light most favorable to the non-moving party, Plaintiff has created a genuine issue of material fact as to whether Defendant Scott applied force maliciously and sadistically for the very purpose of causing harm. Accordingly, summary judgment is inappropriate on Plaintiff's excessive force claim against Defendant Scott in his individual capacity and that portion of the motion should be denied.

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 11, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).